IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SAMARA SHELLMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 23-00446-CV-W-JAM |
| | ) |
| PK MANAGEMENT LLC, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant PK Management LLC's ("PKM") unopposed motion, which includes defense counsel's declaration in support, email correspondence between counsel, and the draft settlement agreement. (Docs. 16, 16-1) For the reasons set forth below, Defendant's unopposed motion is granted.

### I.  BACKGROUND

On June 23, 2023, this action was removed from the Circuit Court of Jackson County, Missouri, to the Western District of Missouri, with Plaintiff alleging violations of the Missouri Human Rights Act ("MHRA") and the Missouri Whistleblower Protection Act ("WPA") in connection with her employment at PKM. (Doc. 1) On September 11, 2023, the parties contend they reached an agreement as to the essential terms of a resolution, which was documented through email correspondence. (Doc. 16-1, pp. 5-6) On September 19, 2023, PKM's counsel provided Plaintiff's counsel with a draft settlement agreement which aligned with the previously agreed-upon terms. (Doc. 16-1, pp. 8-16) Responding on September 26, 2023, Plaintiff's counsel

1

confirmed having no edits and outlined the specific allocation of settlement funds between Plaintiff and her counsel. (Doc. 16-1, p. 8) On September 27, 2023, PKM's counsel emailed the finalized settlement agreement to Plaintiff's counsel, requesting signatures from Plaintiff and her counsel. (Doc. 16-1, pp. 18-25) On November 1, 2023, Plaintiff's counsel notified PKM's attorney that he was unable to reach Plaintiff and indicated his intention to submit a motion to withdraw as her legal counsel. (Doc. 16-1, pp. 27-30) On November 10, 2023, a notice of settlement was filed by Defendant. (Doc. 11) On November 30, 2023, Plaintiff's counsel filed his motion to withdraw, which detailed his extensive yet unsuccessful attempts to locate Plaintiff. (Doc. 13)

On January 12, 2024, a status conference was conducted by the Court. (Doc. 15) Plaintiff's counsel informed the Court of the following: (1) Plaintiff had granted her counsel advance authorization to settle for a specific dollar amount, which the parties ultimately agreed upon; (2) following this agreement as to amount, counsel coordinated to draw up the settlement documents; (3) once the contract was finalized, Plaintiff's counsel sent Plaintiff the agreement, and had one more phone conversation with Plaintiff who was in receipt of the written agreement; (4) during this phone conversation, which took place while Plaintiff was in a grocery store and pressed for time, Plaintiff expressed to her counsel "some concerns about the breadth of the release" in the written agreement; (4) despite promising to call back after leaving the store, Plaintiff did not, and her counsel tried to get in touch with her the following day unsuccessfully; and (5) counsel continued to make diligent efforts to reach Plaintiff but to no avail. During the status conference, Plaintiff's counsel stated that he believed the settlement concerning the claims in the

2

lawsuit was enforceable. Plaintiff's counsel further informed the Court that Plaintiff expressed no other concerns regarding the written settlement agreement. On February 1, 2024, Defendant filed the present motion, which Plaintiff's counsel does not oppose. (Doc. 16)

## II. LEGAL STANDARD

Generally, settlement may be raised as an affirmative defense or, as here, via a motion to enforce the settlement agreement. *See Eaton v. Mallinckrodt, Inc., 224 S.W.3d 596, 599 (Mo. 2007)*. A motion to enforce a settlement adds to the underlying case a collateral action seeking specific performance of the agreement. *Id*. The moving party (here, the Defendant) must prove the existence of the agreement "by clear, convincing and satisfactory evidence." *Id*. "Evidence is clear and convincing if it instantly tilts the scales in the affirmative when weighed against the evidence in opposition, such that the fact finder's mind is left with an abiding conviction that the evidence is true." *Grant v. Sears*, 379 S.W.3d 905, 915 (Mo. Ct. App. 2012) (quoting *Reppy v. Winters*, 351 S.W.3d 717, 720 (Mo. Ct. App. 2011)).

Settlement agreements routinely require one party to tender money to another party, therefore, enforcement of a settlement agreement via the equitable remedy of specific performance will entail an order that money change hands between parties. *See Compass Bank v. Eager Rd. Assocs., LLC*, 922 F. Supp. 2d 818, 824 (E.D. Mo. 2013). An evidentiary hearing should be held when there is a substantial factual dispute over the existence or terms of a settlement. *TCBY Systems, Inc. v. EGB Assocs*., 2 F.3d 288, 291 (8th Cir. 1993), *cert. denied*, 511 U.S. 1108 (1994). Based on the record before the Court, there is no factual dispute over the settlement agreement,

thus, no evidentiary hearing is required. *See Vaughn v. Sexton*, 975 F.2d 498, 505 (8th Cir. 1992), *cert. denied*, 507 U.S. 915 (1993).

As jurisdiction in this action is based on diversity of citizenship, the Court must apply Missouri substantive law to determine whether the parties reached an enforceable settlement agreement. *See Visiting Nurse Ass'n, St. Louis* v. *VNAHealthcare, Inc.*, 347 F.3d 1052, 1053 (8th Cir. 2003). For a settlement agreement to be enforceable, the parties must have reached agreement on the essential terms of the deal. *Kenner v. City of Richmond Heights, Missouri*, 356 F.Supp.2d 1002, 1007-08 (E.D. Mo. 2005), *aff'd*, 196 Fed.Appx. 450 (8th Cir. 2006). Even if the parties have left some details for counsel to work out through further negotiation, a legal, valid settlement agreement can still exist. *Id; see also, Nwachukwu v. St. Louis Univ.,* 114 Fed.Appx. 264 (8th Cir. 2004)(unpublished opinion holding that a valid settlement agreement existed "even though the final agreement contained more expansive or additional clauses related to confidentiality, release of liability, disclaimer of fault, nondisparagement, and reinstatement or reemployment"); *Johnson v. Dobson, et. al.,* 230 F.3d 1363 (8th Cir. 2000)(unpublished opinion holding that the "parties entered into a valid, oral, global-settlement agreement, notwithstanding minor later-resolved issues."); *Vulgamott v. Perry,* 154 S.W.3d 382, 391 (Mo. Ct. App. 2004)(finding that "[a] contract will be valid and enforceable even if some terms may be missing or left to be agreed upon as long as the essential terms are sufficiently definite to enable the court to give them exact meaning."). Further, a settlement may be considered valid and enforceable even if it contemplates that a release will be signed at a later time. *Byrd v. Liesman*, 825 S.W.2d 38, 39 (Mo. Ct. App. 1992).

4

The court has inherent power to enforce a settlement agreement as a matter of law when the terms are unambiguous. *Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999). "Once parties have settled a dispute and have agreed to settlement terms, the parties cannot rescind it." *Caleshu v. Merrill Lynch*, 737 F.Supp. 1070, 1086 (E.D. Mo. 1990) (citing *Kelly v. Greer*, 365 F.2d 669 (3rd Cir. 1966), *cert. denied*, 385 U.S. 1035 (1967)). Express authority to settle is presumed where the non-moving party's "attorney of record asserts such authority." *See Eaton*, 224 S.W.3d at 599.

Basic principles of contract law govern the enforcement of a settlement agreement. *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006) (citations omitted). Under Missouri law, the essential elements of an enforceable contract are: (1) parties competent to contract; (2) a proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Building Erection Servs. Co. v. Plastic Sales & Mfg. Co., Inc.*, 163 S.W.3d 472, 477 (Mo. Ct. App. 2005). The fourth element, mutuality of agreement, "requires that the parties have a mutuality of assent or a meeting of the minds on the essential terms of a contract." *Soybean Merchandising Council v. AgBorn Genetics, LLC*, 534 S.W.3d 822, 829 (Mo. Ct. App. 2017). That is, the terms of agreement must be sufficiently definite to enable the court to give it an exact meaning. *Arkansas-Missouri Forest Products, LLC v. Lerner*, 486 S.W.3d 438, 448 (Mo. Ct. App. 2016). Determining that an agreement is sufficiently definite is favored in the courts in order to carry out the reasonably ascertainable intention of the parties. *Maupin v. Hallmark Cards, Inc.*, 894 S.W.2d 688, 695 (Mo. Ct. App. 1995). "Under the objective theory of contracts applied in Missouri since 1892, the stress is on the outward manifestation of assent made

5

to the other party... ." *Don King Equip. Co. v. Double D Tractor Parts, Inc.*, 115 S.W.3d 363, 369 (Mo. Ct. App. 2003), and not on the secret intention of the parties. *Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc.*, 528 F.3d 556, 561 (8th Cir. 2008).

An essential term is defined as "[a] contractual provision dealing with a significant issue such as subject matter, price, [or] payment." *Bath Junkie, Inc.,* 528 F.3d at 564 n.6; *see also Sheng v. Starkey Labs., Inc.*, 53 F.3d 192, 194 (8th Cir. 1995) ("The more terms the parties leave open, the less likely it is that they have intended to conclude a binding agreement.). Whether essential terms are missing from an agreement depends, in part, on whether the existing terms "produce a reasonably ascertainable objective meaning," or if other essential information would be needed to give effect to those terms. *Visiting Nurse Ass'n*, 347 F.3d at 1054; *see Grant*, 379 S.W.3d at 916 ("A mutual agreement is reached when the minds of the contracting parties...meet upon and assent to the same thing in the same sense at the same time."). Another question that bears on whether essential terms are missing is whether, under the existing terms, the alleged agreement "is specific enough to determine when one of the parties is in breach and provides a basis for giving a remedy." *Visiting Nurse Ass'n*, 347 F.3d at 1054.

### III. ANALYSIS OF ENFOREABILITY

Having identified the requirements of an enforceable settlement agreement, the Court will now assess each element in turn.

#### A. *Competency, Subject Matter, Legal Consideration and Mutuality of Obligation*

There is no dispute that the alleged settlement was made by parties competent to contract, and the subject matter of the alleged agreement is proper. *Chaganti*, 470 F.3d at 1221. Here,

6

there is no challenge to the competency of the parties and the parties had competent and capable legal representation. Additionally, the subject matter—specifically the resolution of pending legal disputes—is suitable for contractual agreement. *See id*. Consequently, elements one—competency—and two—proper subject matter—of an enforceable settlement agreement are met.

Legal consideration exists when there is a detriment to the promisee or a benefit to the promisor, and mutuality of obligation exists whenever there is consideration. *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 859 (Mo. 2006). Here, PKM agreed to make payment to Plaintiff in a specified amount, in exchange for Plaintiff's agreement to dismiss her claims against PKM. Thus, the elements of legal consideration and mutuality of obligation between the parties exist, satisfying elements three and five of an enforceable settlement agreement.

**B.** *<u>Mutuality of Agreement</u>*

The remaining element necessitates the most thorough analysis here. Mutuality of agreement requires "a mutuality of assent by the parties to the terms of the contract," i.e., a "meeting of the minds." *L.B. v. State Comm. of Psychologists*, 912 S.W.2d 611, 617 (Mo. Ct. App. 1995). In determining whether a meeting of minds has occurred, the court looks at the objective manifestations of the parties and by "looking to the intentions of the parties as expressed or manifested in their words or acts." *Id*. A meeting of the minds or mutual assent is reached when the minds of the contracting parties meet upon and assent to the same thing in the same sense at the same time. *Grant*, 379 S.W.3d at 916. The law does not necessitate that parties to a contract share the same subjective interpretation of its meaning. *Visiting Nurse Ass'n*, 347 F.3d at 1054. Instead, courts examine the parties' objective expressions of intent and interpret them as

7

a reasonable person would. *Id*. If these expressions yield a reasonably clear objective meaning, an enforceable agreement exists. *Id*.

To assess if the parties have a mutuality of assent or a meeting of the minds on the essential terms of a contract, the Court must analyze whether the purported resolution included the essential terms. *See Soybean Merchandising Council*, 534 S.W.3d at 829. Defense counsel's email on September 11, 2023, contained a number of contractual provisions, each essential and specific enough to determine breach and remedy. *See Visiting Nurse Ass'n*, 347 F.3d at 1054. These included: (1) payment of money to Plaintiff; (2) IRS indemnification language for tax treatment of 1099 settlement funds; (3) Plaintiff's commitment to maintain confidentiality; (4) dismissal of the pending lawsuit with prejudice; (5) full release of all claims by Plaintiff; (6) warranty of no additional claims; (7) agreement to a "no reapply/no rehire" provision; (8) no admission of liability; (9) agreement to neutral references and commitment not to disparage; (10) each party to bear its own attorneys' fees and costs; and (11) other standard contract terms such as choice of law, etc. (Doc. 16-1, pp. 5-6)

Moreover, Plaintiff's counsel's response to this email and the subsequent one attaching the draft settlement agreement evidenced a meeting of the minds as to the essential terms of the agreement. (Doc. 16-1, pp. 4-6, 8-16) These exchanges were sufficient to "produce a reasonably ascertainable objective meaning" as to the intent of the parties to settle the legal dispute. *See Visiting Nurse Ass'n,* 347 F.3d at 1054. Despite "concerns" verbally expressed by Plaintiff regarding the breadth of the release, her legal counsel confirmed acceptance of the written terms, including the release provision, on behalf of Plaintiff, showing unequivocal acceptance to the

8

agreed upon terms. *See Eaton*, 224 S.W.3d at 599; *see* Doc. 16-1, pp. 4-6. Specifically, Plaintiff's counsel conveyed that Plaintiff "agreed" to the outlined terms and that he had no edits to the draft settlement agreement. (Doc. 16-1, pp. 4-6, 8-16). Plaintiff's counsel also provided an allocated breakdown of the settlement amount. (Doc. 16-1, p. 8). Based on this conduct, and under the objective theory of contracts, Plaintiff accepted the terms of the written settlement agreement. *See e.g., Don King Equip. Co.*, 115 S.W.3d at 369; *Bath Junkie, Inc.*, 528 F.3d at 561. Any reservation on Plaintiff's part is immaterial. *See id*. Despite Plaintiff's generalized verbal "concerns" regarding the scope of release, based on the parties' mutual assent to the essential terms, the settlement agreement is enforceable.

Although Plaintiff to date has not signed and returned the settlement agreement, Plaintiff effectively agreed to dismiss her pending claims and to release all claims in exchange for the settlement funds through her attorney's assent to the unambiguous terms sent via email on September 11, 2023, and through his September 26, 2023, response of no edits to the draft settlement agreement. *See Eaton*, 224 S.W.3d at 599; *see* Doc. 16-1. The parties' conduct establishes mutuality of agreement as to the essential terms which meets the requirements of an enforceable contract.

## IV.  CONCLUSION

Based on the above, the Court finds that Defendant has proved by clear and convincing evidence that the parties entered into a valid and binding settlement agreement which included a full and complete release of claims by Plaintiff. The settlement documents including the email exchange as to the eleven terms and as to the draft agreement contain contractual provisions

9

including the essential terms of the parties' settlement agreement: they describe, *inter alia*, the amount of money to be paid, the subject matter at issue, the obligations of the parties and the allocation of costs and fees. (*See* Doc. 16-1) Thus, specific performance is appropriate. *See Compass Bank*, 922 F. Supp. 2d at 824. It is therefore

**ORDERED** that Defendant's unopposed motion to enforce the settlement agreement is granted. It is further

**ORDERED** that the Defendant shall transfer settlement funds to counsel for Plaintiff in return for Plaintiff's release of all claims. It is further

**ORDERED** that the parties shall file dismissal papers within one month of the filing of this Order. It is further

**ORDERED** that the motion to withdraw (Doc. 13) is denied.

>                /s/ *Jill A. Morris*
>             JILL A. MORRIS
>      UNITED STATES MAGISTRATE JUDGE